IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

———————————————

| | | |
|---|---|---|
| CODY WILLIAM MARBLE, | ) | Cause No. CV 09-141-M-DWM-JCL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY; ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

———————————————

On September 23, 2009, Petitioner Cody Marble filed this action for writ of

habeas corpus under 28 U.S.C. § 2254.  Marble is a state prisoner proceeding pro se.

On September 30, 2009, Marble was ordered to show cause why his petition

should not be dismissed with prejudice as time-barred under 28 U.S.C. § 2244(d)(1).

He responded on October 15, 2009.

## I. Background

Marble was charged with sexual intercourse without consent in Montana's Fourth Judicial District Court, Missoula County. The State alleged that Marble, while in custody at the Missoula County Juvenile Detention Center, raped another juvenile detainee. On the State's motion, Marble was prosecuted in the district court rather than youth court. A jury convicted him. On January 9, 2004, he was sentenced to serve twenty years in prison, with 15 suspended. Pet. (doc. 1) at 2-3 ¶¶ 1-6; State v. Marble, 119 P.3d 88, 89 ¶¶ 5, 8 (Mont. 2005).

Marble appealed. On August 23, 2005, the Montana Supreme Court affirmed his conviction. Marble, 119 P.3d at 89 ¶ 1. His conviction became final ninety days later, on November 21, 2005.

Three hundred forty-six days after his conviction became final, on November 2, 2006, Marble filed a petition for postconviction relief in the trial court. Appellant Br. at 2, Marble v. State, No. DA 08-0359 (Mont. filed Jan. 20, 2009). When the trial court denied relief, Marble again appealed to the Montana Supreme Court, under Cause No. DA 08-0359.

Meanwhile, Marble was released to serve the suspended portion of his sentence on probation. The State filed a petition to revoke his suspended sentence, and he was

found to have violated its conditions.  On March 30, 2009, he was resentenced to serve 15 years in prison, with 10 suspended.  Marble appealed the revocation under Cause No. DA 09-0312.

On May 1, 2009, Marble filed a motion in his post-conviction appeal seeking leave to add a new claim for postconviction relief.  He asserted that he had only just discovered the law that supported the claim.  He asked the Montana Supreme Court to remand his case to the trial court so that he could file a second amended petition containing the claim, or, in the alternative, to permit him to file a petition for writ of habeas corpus, an out-of-time appeal, "or any other appropriate remedy."  The State filed its response to the motion on May 15, 2009.  Order at 1, Marble v. State, No. DA 08-0359 (Mont. filed June 2, 2009).

On May 27, 2009, the Montana Supreme Court affirmed denial of postconviction relief.  Marble v. State, No. DA 08-0359 (Mont. May 27, 2009).

On June 2, the Montana Supreme Court issued an order construing Marble's motion for leave to add a new claim as a petition for writ of habeas corpus and set a deadline for the State to file a response.  Order at 2, Marble, No. DA 08-0359.

On June 4, 2009, the Montana Supreme Court issued an order nunc pro tunc, superseding the Order of June 2.  Rather than construing Marble's motion as a petition, the court construed the motion "as a request for leave to seek habeas corpus

relief." He was required to file the petition under a new cause number, "as remittitur will shortly issue in this matter," that is, the postconviction appeal, No. 08-0359. Nunc Pro Tunc Order at 2, <u>Marble</u>, No. DA 08-0359 (Mont. June 4, 2009).

On June 12, 2009, Marble filed his petition for writ of habeas corpus. On September 16, 2009, the Montana Supreme Court denied the petition. Order at 3, <u>Marble v. Mahoney</u>, No. OP 09-0342 (Mont. Sept. 16, 2009).

Marble signed his federal habeas petition and deposited it in the prison mail system on September 18, 2009, Pet. at 10, Pet'r Decl. ¶ C; <u>Houston v. Lack</u>, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule), two days after his state habeas petition was denied and 114 days after his postconviction appeal was denied.

## II. Marble's Allegations

Marble contends that the trial court erred in denying a challenge for cause, in instructing the jury regarding its determination of the witnesses' credibility, and in failing to hold a hearing on the State's motion to try him as an adult. Pet. at 3-4 ¶ 15A-B; <u>id.</u> at 9 ¶ 15F. He also contends that counsel was ineffective in several respects, <u>id.</u> at 5 ¶ 15C, that a videotape played at trial was tampered with, <u>id.</u> at 6 ¶ 15D, and that his trial was marred by prosecutorial misconduct, <u>id.</u> at 8 ¶ 15E.

## III. Analysis

The Court raised the statute of limitations issue in its preliminary screening and

gave Marble an opportunity to respond. <u>Herbst v. Cook</u>, 260 F.3d 1039, 1042-43 (9th Cir. 2001).

## A. Application of the Federal Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations applies to petitions filed under 28 U.S.C. § 2254. In this case, the limitations period began to run on the date Marble's conviction became "final" in state court, <u>id.</u> § 2244(d)(1)(A), that is, ninety days after the Montana Supreme Court affirmed his conviction on direct appeal. <u>Bowen v. Roe</u>, 188 F.3d 1157, 1159 (9th Cir. 1999). Marble's conviction became final on November 21, 2005. Absent statutory tolling, he had to file his federal petition on or before November 21, 2006.

## B. Statutory Tolling

28 U.S.C. § 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The purpose of this tolling provision is to enable state prisoners to exhaust their remedies in state court without running afoul of the one-year federal limitations period, § 2244(d)(1), for filing in federal court. <u>Carey v. Saffold</u>, 536 U.S. 214, 222

(2002).

Marble filed his petition for postconviction relief in the trial court on November 2, 2006, 346 days after the federal statute of limitations began to run.[1] The Montana Supreme Court affirmed denial of postconviction relief on May 27, 2009. Time between those two dates is tolled. From May 27, 2009, Marble had nineteen days – until June 19, 2009 – to file his federal petition in this Court. As noted, Marble did not file his federal petition until September 23, 2009.

Marble points out that the Montana Supreme Court granted him leave to file a petition for writ of habeas corpus, only to dismiss it on the grounds that habeas relief is not available under state law to challenge the validity of a conviction or sentence. He argues that his state habeas petition was a "properly filed application for State post-conviction or other collateral review." If he is correct, time is tolled from the filing of his petition on June 12, 2009,[2] until the Montana Supreme Court dismissed it on September 16, 2009, and his federal petition is timely by a few days.

In <u>Artuz v. Bennett</u>, 531 U.S. 4 (2000), the Supreme Court interpreted the phrase "properly filed."

---

[1] For purposes of § 2244(d)(2), the filing date of Marble's postconviction petition might be a few days before November 2, 2006, if he mailed it from a jail or prison. <u>Huizar v. Carey</u>, 273 F.3d 1220, 1223 (9th Cir. 2001).

[2] Again, possibly a few days earlier, but that will make no difference in the analysis.

> [A]n application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. . . .
>
> . . . If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be *pending*, but not *properly filed*.

Id. at 8 (emphases in original) (footnote omitted).  In its conclusion, the Court  said that if a state petition was dismissed because it failed to meet a "condition to filing," time was not tolled while the petition is pending.  If a state petition was dismissed because it did not meet a "condition to obtaining relief," time was tolled.  Id. at 11.

Artuz[3] held that the prisoner's state motion to vacate his conviction was properly filed, even though it was ultimately denied because all the claims it raised could have been or were litigated previously.  The state rules defining when particular claims or grounds for relief must be raised were conditions to obtaining relief.  Id. at 10-11.

In Pace v. DiGuglielmo, 544 U.S. 408 (2005), the Court expanded on the distinction between conditions to filing and conditions to obtaining relief:

> For purposes of determining what are "filing" conditions, there is an obvious distinction between time limits, which go to the very initiation of a petition and a court's ability to consider that petition, and the type

---

[3]  Conventionally, the short name of a case is not the name of a governmental official, such as a warden.  Artuz, therefore, should be Bennett.  But the Supreme Court says Artuz.  E.g., Carey v. Saffold, 536 U.S. 214, 229 (2002) (Kennedy, J., dissenting); Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005).

of "rule of decision" procedural bars at issue in <u>Artuz</u>, which go to the ability to obtain relief.

<u>Id.</u> at 417.  Whether "obvious" is a fair description or not, it is at least clear that "jurisdictional matters . . . which often necessitate judicial scrutiny, are 'conditions to filing.'"  <u>Id.</u> at 414.  Jurisdiction goes "to the very initiation of a petition and a court's ability to consider that petition," as opposed to rules applying to grounds for relief, as in <u>Artuz</u>.  Consequently, <u>Pace</u> reasoned that a petition filed in a state court will not toll time if the state court ultimately finds that it lacks jurisdiction to consider the petition.  <u>E.g.</u>, <u>Ramirez v. Yates</u>, 571 F.3d 993, 999 (9th Cir. 2009); <u>cf.</u> <u>Saffold</u>, 536 U.S. at 224 (suggesting that, in states with "appeal" systems of postconviction review like Montana's, original writs available only in extraordinary circumstances will not toll time under § 2244(d)(2)).[4]

> Under Montana law:
>
> The writ of habeas corpus is not available to attack the validity of the conviction or sentence of a person who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal. The relief under this chapter is not available to attack the legality of an order revoking a suspended or deferred sentence.

Mont. Code Ann. § 46-22-101(2) (2009).  Instead, the "normal state channel" for

---

[4] Four dissenting justices in <u>Saffold</u> were dismayed that "the Court now requires federal courts to define the ordinary collateral review procedures in each State.  It may not be clear in how many States original writs will fall on the side of the ordinary, but it is clear that the question will be litigated."  <u>Saffold</u>, 536 U.S. at 233 (Kennedy, J., dissenting).  As the shopping-mall maps say, "You are here."

postconviction review, <u>Pitchess v. Davis</u>, 421 U.S. 482, 488 (1975) (per curiam), is a petition for postconviction relief, including appellate review of the trial court's ruling on the petition.  Mont. Code Ann. §§ 46-21-101 to -203.  Postconviction petitions are subject to several restrictions, including a one-year limitations period, a general one-petition rule, a one-amendment rule, and a general prohibition on raising grounds that were or could have been raised on direct appeal.  <u>Id.</u> §§ 102, 105.

In 2006, the Montana Supreme Court held that, under a certain circumstance, the statute restricting the availability of habeas corpus relief is an unconstitutional suspension of the writ in violation of Article II, Section 19 of the Montana Constitution.  <u>Lott v. State</u>, 150 P.3d 337 (Mont. 2006).  This circumstance arises when a person is incarcerated under "a facially invalid sentence – a sentence which, as a matter of law, the court had no authority to impose."  <u>Id</u>. at 342 ¶ 22.  Based on Lott's case, the court gave two examples of this sort of sentence:  "a sentence which either exceeds the statutory maximum for the crime charged or which violates the constitutional right to be free from double jeopardy."[5]  <u>Id.</u> at 342 ¶ 22; <u>see also</u> <u>State v. Jackson</u>, 165 P.3d 321, 323 ¶¶ 9-11 (Mont. 2007); <u>Gratzer v. Mahoney</u>, 150 P.3d

---

[5]  Lott, for instance, was sentenced to ten years for aggravated burglary and ten years for felony assault, with a consecutive ten-year sentence added to each of those counts for use of a weapon.  <u>Lott</u>, 150 P.3d at 337 ¶ 1.  Use of a weapon was an element of both aggravated burglary and felony assault.  Consequently, a consecutive sentence for use of a weapon appended to those two offenses constitutes double jeopardy in violation of the Montana Constitution.  <u>State v. Guillaume</u>, 975 P.2d 312, 316 ¶ 16 (Mont. 1999).

343, 345 ¶¶ 2-3 (Mont. 2006).

In <u>Lott</u>, <u>Gratzer</u>, and <u>Jackson</u>, the petitioners argued they were serving sentences not authorized by the law in place at the time of their sentencing.  Had they filed petitions for postconviction relief, all three would have been time-barred, and all three would have been procedurally barred from obtaining relief for claims they could have raised on direct appeal.  For Lott, the difference was twenty more years in prison than was authorized by law.  This, the Montana Supreme Court held, was a "grievous wrong" and a "miscarriage of justice" that simply had to be corrected.  <u>Lott</u>, 150 P.3d at 342 ¶ 22.  His petition for habeas relief was therefore granted.

Marble's case is different.  His case was pending before the Montana Supreme Court on postconviction appeal when he discovered what he believed to be another defect in the procedures through which he was convicted.  He asserted that he was denied a hearing before his case was transferred from youth court to the district court.  In an attempt to have this claim heard on the merits, he filed a motion in the Montana Supreme Court seeking remand to the trial court so that he could amend his petition to add the claim.  He had already amended his postconviction petition once in the trial court.  He could not file a new petition because the argument was available to him as of the time he was denied a hearing, and a new petition would be subject to the stringent "good cause" requirement for filing a second petition and almost certainly

time-barred as well, State v. Root, 64 P.3d 1035, 1037 ¶ 16 (Mont. 2003).  In the

alternative, Marble asked the Montana Supreme Court to extend any other appropriate

remedy, including a petition for writ of habeas corpus or an out-of-time appeal.

Although the Montana Supreme Court granted Marble leave to file a habeas

petition, its reasons for denying that petition are decisive here.  Marble argued that

the trial court "lacked subject matter jurisdiction and statutory authority to sentence

him" because of the error in denying him a transfer hearing after charges were filed.

He relied on Lott.  The Montana Supreme Court distinguished Lott, saying that it was

"limited to incarceration pursuant to a sentence that is facially illegal."  Order at 2,

Marble, No. OP 09-0342.  The court then cited the statute restricting habeas relief:

> Section 46-22-101(2), MCA, specifically excludes the writ of habeas
> corpus as a vehicle to attack the conviction or sentence of a person
> adjudged guilty in a court of record, who has exhausted the right of
> appeal.  Marble appealed from his initial conviction and exhausted his
> right to appeal.  Marble's jurisdictional claim fails.
>      Marble's current incarceration has resulted from the revocation of
> his suspended sentence imposed in Missoula County Cause No. DC-32-
> 2002. Section 46-22-101(2), MCA, specifically precludes habeas corpus
> as a means for attacking an order revoking a suspended sentence.
> Marble's petition lacks merit.

Id.

In sum, the Montana Supreme Court held that the writ of habeas corpus was not

available to Marble under state law – not merely that habeas relief was not warranted,

a point it did not decide, but that such relief was not available.[6]  Under Montana law, except in very limited circumstances that do not go to the validity of a conviction at all, it is not proper to file a petition for writ of habeas corpus as an application for collateral relief.  That is what the statute says, and it is what the Montana Supreme Court said in Marble's case.  This Court must conclude that Marble's habeas petition was not a properly filed application for State post-conviction or other collateral relief.

If Marble's filing of a habeas petition, by itself, were sufficient to toll time under § 2244(d)(2), a prisoner could file applications for all kinds of writs Montana courts have jurisdiction to issue but the prisoner himself has no standing to pursue – writs of supervisory control, mandate, review, quo warranto, coram nobis, and possibly others.  Pace foresaw and forestalled this possibility:

> On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions.  This would turn § 2244(d)(2) into a de facto extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

Pace, 544 U.S. at 413.  Here, as in Pace, when the state's highest court holds that it does not have the authority to grant relief, "that is the end of the matter for purposes of § 2244(d)(2)."  Id. at 414 (internal quotation marks omitted).

---

[6]  By way of contrast, in Gratzer, the Montana Supreme Court held that the Lott exception applied but relief was not warranted.  150 P.3d at 345 ¶ 2, 349 ¶¶ 15-16.

This result is supported by Ninth Circuit case law.  In <u>Ramirez</u>, the court held that a petition for writ of error coram nobis was properly filed in a California trial court because the court found the petitioner "'had not made the requisite showing' to warrant relief."  Ramirez's appeal from that ruling, however, was not properly filed; the California Court of Appeal held the trial court's ruling "not appealable because the underlying petition failed to state a prima facie case for relief."  571 F.3d at 999. Accordingly, time was tolled under § 2244(d)(2) while Ramirez's petition was pending in the trial court but not while his appeal was pending before the appellate court.  <u>Id.</u>  In <u>Blair v. Crawford</u>, the court held a Nevada habeas petition was properly filed where the Nevada Supreme Court denied the petition by saying "our intervention by extraordinary writ is not warranted."  275 F.3d 1156, 1159 (9th Cir. 2002).  What was decisive was not the form of the filing but what the state court said about it.

True, the Montana Supreme Court frequently uses the phrase "procedural bar" to describe the statute restricting habeas relief, Mont. Code Ann. § 46-22-101(2).  But "for purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions, rather than the particular name that it bears."  <u>Saffold</u>, 536 U.S. at 223.  Courts often say that untimely claims are "procedurally barred."  <u>E.g.</u>, <u>Drew v. Dep't of Corrections</u>, 297 F.3d 1278, 1284-85

(11th Cir. 2002) (describing circuit precedent as holding that "claims considered procedurally barred under state law for reasons such as untimeliness were not properly filed and could therefore not toll the AEDPA statute of limitations."). The Montana Supreme Court, in numerous unpublished decisions, refers to the "procedural time bar" or "procedural bar of the one-year (or five-year) time bar" of Mont. Code Ann. § 46-21-102.[7]  Nonetheless, <u>Pace</u> considered the impact of a time bar under state law on the analysis under § 2244(d)(2) and concluded that it was different than "the type of 'rule of decision' procedural bars in <u>Artuz</u>, which go to the ability to obtain relief." <u>Pace</u>, 544 U.S. at 417.  The Court concluded that "time limits, *no matter their form,* are 'filing' conditions." <u>Id.</u> (emphasis added).  The Montana Supreme Court's characterization of the Legislature's limitation on habeas relief as a "procedural bar" does not control application of § 2244(d)(2).

The result here dovetails with what is required and what suffices to meet the exhaustion requirement of 28 U.S.C. § 2254(b), which § 2244(d)(2) is designed to protect.  <u>Saffold</u>, 536 U.S. at 222.  To properly exhaust a claim, a state prisoner must raise it throughout "one complete round of the State's established appellate review process."  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).  In Montana, the

---

[7]  The Montana Supreme Court most often refers to time bars as separate from procedural bars when both apply to a given petition.

established, "normal state channels for review," Pitchess, 421 U.S. at 488, are appeal

as of right[8] from the criminal judgment and postconviction review, consisting of one

proceeding in the trial court and an appeal as of right to the Montana Supreme Court.

Raising a claim for the first time in a petition for writ of habeas corpus will not

suffice to meet the exhaustion requirement if the Montana Supreme Court dismisses

or denies the petition without opinion.  Pitchess, 421 U.S. at 488; see also Ex Parte

Hawk, 321 U.S. 114, 116 (1944) (per curiam).

        But, if there is an opinion, then the federal court's decision "hinges on what

happened" to the petition in the state court.  Greene v. Lambert, 288 F.3d 1081, 1086

(9th Cir. 2002), quoted in Chambers v. McDaniel, 549 F.3d 1191, 1196 (9th Cir.

2008).  Presumably, an issue raised in a state habeas petition that meets the Lott

exception will be considered on the merits by the Montana Supreme Court and will,

therefore, both meet the federal exhaustion requirement and toll time under §

2244(d)(2), even if the petition is denied on the merits.  (It may still be untimely

under federal law, but not for lack of tolling under § 2244(d)(2).)  Conversely, a

petition that does not meet the Lott exception will neither meet the exhaustion

requirement nor toll the federal limitations period.  The federal incentives enacted by

_____

        [8] "As of right" means that the Montana Supreme Court does not have discretion to decline
to hear the appeal.  It is the only appellate court in Montana.  Some other states' highest courts, such
as the California Supreme Court, have discretion to hear or refuse appeals.

AEDPA are in line with and interact with state procedure.  <u>Saffold</u>, 536 U.S. at 223.

It may seem anomalous to hold, in effect, that one never knows whether time is tolled while a state petition is pending until after the state court rules on the petition.  But that is overstating the potential problem.  It is not that one *never* knows.  When a postconviction petition is filed in a Montana trial court, or when an appeal is timely taken from the judgment or from the trial court's ruling on a postconviction petition, time is tolled.  Filing something unusual raises the question.  State law defines what is usual and what is unusual procedure.  State prisoners should use the usual procedures.  And, when the unusual occurs, federal law provides a safe harbor.  The <u>Pace</u> Court said:

> [P]etitioner challenges the fairness of our interpretation.  He claims that a petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never properly filed, and thus that his federal habeas petition is time barred.  A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.  A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court.

<u>Pace</u>, 544 U.S. at 416 (internal quotation marks, citation, and parallel citations omitted) (citing <u>Rhines v. Weber</u>, 544 U.S. 269, 278 (2005)).  Only where it is reasonable to be confused will the protective filing avoid dismissal, but it should only

be necessary in that case.  Where a Montana habeas petition does not challenge the facial validity of a sentence, there is no reason to be confused and no reason to delay filing the federal petition, because the state habeas petition will not toll time under § 2244(d)(2) unless it meets the <u>Lott</u> exception.

Marble is not entitled to statutory tolling for the time during which his habeas petition was pending in the Montana Supreme Court.  He filed his federal petition 95 days too late.[9]

## C. Equitable Tolling

Marble might be entitled to equitable tolling of the limitations period if he demonstrates that extraordinary circumstances beyond his control made it impossible for him to file his federal petition on time.  <u>Calderon v. United States Dist. Court</u> ("<u>Beeler</u>"), 128 F.3d 1283, 1288-89 (9th Cir. 1997) (internal quotation omitted);[10] <u>see also Roy v. Lampert</u>, 465 F.3d 964, 969 (9th Cir. 2006).

Marble states that he has acted with due diligence.  He asks the Court to "place

---

[9]  The Court previously said the petition was 105 days late.  That was because it mistakenly said Marble had nine days to file after his postconviction appeal was denied, when he actually had nineteen days.  Order to Show Cause (doc. 5) at 4.

[10]  <u>Beeler</u> was overruled on other grounds by <u>Calderon v. United States Dist. Court</u> ("<u>Kelly IV</u>"), 163 F.3d 530,  539-40 (9th Cir. 1998) (en banc).  <u>Kelly IV</u> was itself abrogated by <u>Woodford v. Garceau</u>, 538 U.S. 202, 205-06 (2003).  <u>Garceau</u> adopted the rule from <u>Beeler</u> that <u>Kelly IV</u> had overruled.  Therefore, <u>Beeler</u> correctly expresses the law in the Ninth Circuit, despite still being flagged in certain databases as if it has been overruled.  None of these developments matter in Marble's case.

special emphasis on the fact that the Montana Supreme Court chose to procedurally bar their own chosen remedy." Resp. to Order (doc. 7) at 5. He also states that he "has not missed one single day through any fault of his own," id., and that his claim regarding his transfer hearing has merit. He argues that "the interests of justice would be better served by addressing the merits of his petition." Id. (internal quotation marks and citation omitted).

Clearly, this is not a case of unexplained delay by a state prisoner (although the claim regarding the transfer hearing could and should have been raised earlier). Undoubtedly, Marble has demonstrated due diligence.

But the law frequently requires more than good faith and due diligence. Even as a pro se litigant, Marble is charged with knowledge of the law. Whether anyone told him about the statutory restriction on state habeas relief or not, he is charged with knowledge of it. But beyond that, the State's response to the motion he filed in his postconviction appeal specifically advised him of Mont. Code Ann. § 46-22-101(2) and specifically distinguished Lott. Additionally, in 2005, the Pace Court suggested protectively filing a federal habeas petition where a petitioner has "reasonable confusion" over whether a particular filing in state court will toll time under § 2244(d)(2). The Montana Supreme Court's willingness to give Marble every chance to demonstrate a constitutional and remediable defect in the judgment against him is

not a basis for equitable tolling in federal court.  Even if the court's ruling generated "reasonable confusion" over whether tolling would apply, <u>Pace</u> and <u>Rhines</u> prescribe the means for dealing with that.  Marble was not without options.  Under the circumstances here, applying equitable tolling would directly contradict <u>Pace</u> and <u>Rhines</u>, to say nothing of <u>Lott</u> and Mont. Code Ann. § 46-22-101(2).  It was possible for Marble to file his federal petition on time.

Finally, Congress and courts higher than this one decide when the "interests of justice" are better served by reaching the merits.  The Supreme Court holds that "AEDPA's 1-year limitations period quite plainly serves the well-recognized interest in the finality of state court judgments.  It reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." <u>Rhines</u>, 544 U.S. at 276 (internal quotation marks and citations omitted).  The federal limitations period means, in effect, that at the end of the federal year, with tolling for properly filed state petitions related to the judgment or claims presented in federal court, the State's interest in finality outweighs the prisoner's interest in vindicating his federal constitutional rights.  This Court might not strike that balance every time in the same way as Congress and the Supreme Court have.  But they are the ones who strike the balance.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000). Marble "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the questions are 'adequate to deserve encouragement to proceed further,'" Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where, as here, the district court dismisses a claim on procedural grounds, the court must decide whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Lambright, 220 F.3d at 1026 (quoting Slack, 529 U.S. at 484).

The Court has not closely considered Marble's claims for relief, but they do not present a strong prima facie case. As for the procedural ruling, this case is controlled by Pace v. DiGuglielmo, 544 U.S. 408 (2005), and Ramirez v. Yates, 571 F.3d 993

(9th Cir. 2009).  The Ninth Circuit Court of Appeals has not addressed Montana's writ of habeas corpus, but its manner of addressing Ramirez's petitions in the California courts clearly dictate the result here.  A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  Marble's petition (doc. 1) should be DISMISSED WITH PREJUDICE as time-barred.

2.  The Clerk of Court should be directed to enter judgment in favor of Respondents and against Petitioner Marble.

3.  A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT AND
## CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within fourteen (14) calendar days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely

file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

      <u>Marble must immediately inform the Court of any change in his mailing address.</u>  Failure to do so may result in dismissal of his case without notice to him.

      DATED this 29th day of December, 2009.


            /s/ Jeremiah C. Lynch
            Jeremiah C. Lynch
            United States Magistrate Judge