IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

**FILED**

JAN 15 2014

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| CODY WILLIAM MARBLE, | Cause No. CV 09-141-M-DWM-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| LEROY KIRKEGARD, Warden, Montana State Prison; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

This case comes before the Court on Cody Marble's petition for writ of

habeas corpus under 28 U.S.C. § 2254. Marble is a state prisoner represented by

Assistant Federal Defender David Ness.

On January 29, 2010, United States District Judge Donald W. Molloy

adopted this Court's Findings and Recommendation. Judge Molloy concluded that

Marble's federal petition was not timely filed and dismissed it with prejudice.

Marble appealed. On October 10, 2013, the Ninth Circuit Court of Appeals

affirmed that Marble's federal habeas petition "was filed outside of the one-year

statute of limitations period." But it remanded the case for an evidentiary hearing o

the specific issue of whether Marble was entitled to equitable tolling of the federal

limitations period. Mem. at 2, *Marble v. Attorney General*, No. 10-35159 (9th Cir.

1

Oct. 10, 2013). Following issuance of the mandate on November 6, 2013, the matter was referred to the undersigned.

A hearing was held on January 7, 2014. Marble testified as to what he did, why he did it, and what he believed to be happening in the course of his postconviction and habeas proceedings in the Montana Supreme Court between May and September 2009.

## Background

1. Marble was convicted of sexual intercourse without consent for his rape of another juvenile at a correctional facility where both were detained. Marble was 17 years old at the time of the crime. He was tried by a jury in the district court and sentenced to serve 20 years in prison with 15 suspended. Judgment (Doc. 31-1) at 2; *State v. Marble*, 119 P.3d 88, 89 ¶ 5 (Mont. 2005). He pursued a direct appeal and postconviction relief in the state courts. He also filed a petition for writ of habeas corpus in the Montana Supreme Court. When each of these avenues for relief proved unsuccessful, Marble filed a habeas petition in federal court under 28 U.S.C. § 2254.

2. The central question is whether Marble was entitled to *equitable* tolling for the period of time his state habeas petition was pending in the Montana Supreme Court. Although counsel for Marble wishes to preserve his ability to argue for *statutory* tolling, the appellate court's decision stated that Marble's

2

petition was untimely, citing 28 U.S.C. § 2244(d). Subsection (d) includes

subsection (d)(2), which is the statutory tolling provision. Marble is not entitled to

statutory tolling, and this Court would exceed the Ninth Circuit mandate, and

hence its jurisdiction, by reconsidering his claim that he is. *United States v.*

*Thrasher*, 483 F.3d 977, 981-82 (9th Cir. 2007). Nevertheless, as a factual matter,

how statutory tolling applies in Marble's case is relevant to his argument for

equitable tolling. Consequently, both equitable and statutory tolling are discussed

below.

3. Marble's federal petition was filed on **September 18, 2009**. Pet. (Doc. 1)

at 10, Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

4. State prisoners have one year to file a habeas petition in federal court

under 28 U.S.C. § 2254 to challenge a state conviction or sentence. In Marble's

case, the federal limitations period began to run when his conviction became

"final." The Montana Supreme Court affirmed his conviction on direct review on

August 23, 2005. *State v. Marble*, 119 P.3d 88 (Mont. 2005). The conviction

became final ninety days later, that is, on November 21, 2005. 28 U.S.C. §

2244(d)(1)(A); *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012); U.S.

Sup. Ct. R. 13(1), (3). As of that day, the last day Marble could file a federal

habeas petition was November 21, 2006.

5. November 20, 2006, would have been Day 364 of the federal habeas

limitations period and the state postconviction limitations period as well, *see* Mont. Code Ann. § 46-21-102(1)(b). On that day, Marble filed his state petition for postconviction relief. 28 U.S.C. § 2244(d)(2) tolls federal time while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Because the state postconviction petition was timely and contained at least one claim seeking review of the criminal judgment, *see* Mont. Code Ann. §§ 46-21-101(1), -102(1)(b), it was "properly filed" and "pending" on November 20, 2006. Federal courts do not heed the time of filing, only the day. Thus, whether Marble filed at 8:00 a.m. or 5:00 p.m., the entire day of November 20, 2006, does not count against him under the *federal* limitations period; or, to put it another way, because Marble filed his state postconviction petition on November 20, 2006, that day was *not* Day 364 of the *federal* limitations period. 28 U.S.C. § 2244(d)(2) (any day on which a state collateral attack is pending "shall not be counted"); *Smith v. Ratelle*, 323 F.3d 813, 815 n.2 (9th Cir. 2003). Consequently, throughout the time state postconviction proceedings were pending in the state trial and appellate courts, Marble had **two** days remaining on the federal clock.

6. Throughout his postconviction appeal and state habeas proceedings,

Marble represented himself.[1]

7. The trial court denied Marble's petition for postconviction relief. Marble, acting *pro se*, appealed. The postconviction appeal, *Marble v. State*, No. DA 08-0359, was fully briefed and ready for decision in the Montana Supreme Court as of February 28, 2009.

8. On May 1, 2009, Marble filed a motion seeking a remand to the trial court so he could add a new claim for relief, *viz.*, that he was entitled to a hearing prior to being tried and sentenced as an adult in the district court rather than as a juvenile in the youth court ("the transfer-hearing claim"). Marble briefed the merits of the claim and asked the Montana Supreme Court to reverse his conviction; failing that, to reverse the trial court's postconviction decision; failing that, to remand the postconviction case back to the trial court for an evidentiary hearing on the transfer-hearing claim. Mot. for Limited Remand (Doc. 7-1) at 6.[2] Although the text of Marble's motion did not address or request initiation of any type of proceeding other than postconviction, the title of his motion was "Motion for Limited Remand for Amendment of Post Conviction to Include Additional Issue or

---

[1] An attorney retained by Marble's father prepared the postconviction petition that was filed in the trial court. Postconviction Pet. (Doc. 31-2) at 1. Marble testified that counsel "abandoned" him. The trial court's docket shows that counsel sought and was granted leave to withdraw on or about April 2, 2008, more than two months before the conclusion of proceedings in the trial court. Trial Court Docket (Doc. 31-3) at 2 Nos. 41, 42.

[2] This and the other cited documents from the state courts' records were admitted into evidence at the hearing.

5

*in the Alternative Motion for Leave to File Separate Petition for Writ of Habeas Corpus* or Out of Time Appeal or Any Other Appropriate Remedy." *Id.* at 1, 1-2, 9 (emphasis added).

9. The State responded to Marble's motion on May 15, 2009. It first argued that Marble could not raise the transfer-hearing claim in postconviction proceedings because a postconviction petition may be amended only once, *see* Mont. Code Ann. § 46-21-105(1)(a), and Marble had once before amended his petition in the trial court. The State added that Marble did not need to file a motion for leave to file a habeas petition. The State said:

> Currently, there is a fully-briefed appeal pending before this Court related to the district court's denial of Appellant's petition for postconviction relief. With that appeal pending, it seems logical and judicious for this Court to decide the issues in that appeal before entertaining any possible habeas corpus relief, *if it is even available to the Appellant*. For this reason the Appellant's motion should be denied.

Resp. to Mot. (Docs. 7-2, 31-5) at 3 (emphasis added).

10. On Wednesday, May 27, 2009, without addressing Marble's motion or the State's response at all, the Montana Supreme Court affirmed the trial court's denial of postconviction relief. Order, *passim*, *Marble v. State*, No. DA 08-0359 (Mont. May 27, 2009) (Doc. 1-1) (unpublished decision).

11. Marble's father told him of the Montana Supreme Court's decision. Marble asked about the pending motion for limited remand and understood, based

6

on his father's report of a conversation with a clerk at the Montana Supreme Court, that the motion was still outstanding.

12. On Thursday, May 28, 2009 – the day after the Montana Supreme Court ruled on the postconviction appeal – Marble signed a habeas petition captioned for filing in the Montana Supreme Court. State Habeas Pet. (Doc. 31-7) at 1, 9, 10, 11. Marble testified that he mailed the petition to the Montana Supreme Court on May 28, 2009, because he was not sure whether his remaining motion in the postconviction appeal meant that he still had something filed in the Montana Supreme Court, and he wanted "to make sure" he had something pending for the purpose of tolling time under § 2244(d)(2).

13. On the following Tuesday, June 2, 2009, the Montana Supreme Court issued an order in the postconviction appeal, Cause No. DA 08-0359, stating that it would construe Marble's "Motion for Limited Remand for Amendment of Post Conviction to Include Additional Issue or in the Alternative Motion for Leave to File Separate Petition for Writ of Habeas Corpus or Out of Time Appeal or Any Other Appropriate Remedy" as a request for habeas relief. The court also set a deadline for the State to respond by "addressing the merits of Marble's argument concerning the lack of transfer hearing, *and the propriety of habeas relief as a result.*" Order at 2, *Marble*, No. DA 08-0539 (Mont. June 2, 2009) (Doc. 7-4) (emphasis added).

14. Marble testified that he believed the June 2, 2009, order of the Montana Supreme Court meant that he had a habeas petition "pending" in the Montana Supreme Court, and therefore time was tolled under § 2244(d)(2), as of May 1, 2009.

15. Two days later, on Thursday, June 4, 2009, the Montana Supreme Court issued a *nunc pro tunc* order under Cause No. DA 08-0359, directing Marble to file a petition for writ of habeas corpus under a new case number, "as remittitur will shortly issue in this matter," that is, in his postconviction appeal. *Nunc Pro Tunc* Order at 2, *Marble*, No. DA 08-0359 (Mont. June 4, 2009) (Doc. 7-5). The court also stated that its *Nunc Pro Tunc* Order "supersede[s] the Order issued June 3 [sic], 2009," thus superseding the requirement that the State file a response.

16. On the same day, a deputy clerk at the Montana Supreme Court returned "documents" to Marble. The clerk's cover letter stated, in part, that "Petitions for writ must be prepared pursuant to Rule 14, M.R. App. P., and must be accompanied with a $100.00 fee." Clerk Letter at 1 (Doc. 7-6). Marble testified that he does not recall what documents were returned to him.

17. On June 11, 2009, Marble signed a certificate of service on the state habeas petition he had previously signed on May 28, 2009. State Habeas Pet. at 12. The Montana Supreme Court received and filed the petition on June 12, 2009, under Cause No. OP 09-0342. *Id.* at 1. Assuming, for the sake of argument, that

8

Marble delivered the petition to prison authorities for mailing on the day he signed the certificate of service, the petition is deemed filed on June 11, 2009, notwithstanding the Montana Supreme Court's filing date. *Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) (extending prison mailbox rule to determine date statutory tolling began under § 2244(d)(2)).

18. Thereafter, the Montana Supreme Court granted Marble's motion to proceed in forma pauperis and ordered the State to file a response. The State responded on August 27, 2009. It argued, among other things, that a habeas petition was not available for collateral attack, citing Mont. Code Ann. § 46-22-101(2). Resp. to State Habeas Pet. (Doc. 31-9) at 5-8.

19. On September 16, 2009, the Montana Supreme Court denied Marble's state habeas petition. It described Marble's argument as contending "that the District Court lacked subject matter jurisdiction and statutory authority to sentence him" based on the trial court's alleged failure to hold a transfer hearing. It concluded that "Marble's jurisdictional claim fails." Order at 2, *Marble*, No. OP 09-0342 (Mont. Sept. 16, 2009). The court also noted that "Section 46-22-101(2), MCA, specifically excludes the writ of habeas corpus as a vehicle to attack the conviction or sentence of a person adjudged guilty in a court of record." *Id.*

20. Two days after the Montana Supreme Court denied his petition for writ of habeas corpus under state law, on September 18, 2009, Marble filed his federal

habeas petition.

## Findings and Conclusions

21. The State points out that several days elapsed between the Montana Supreme Court's ruling on Marble's postconviction appeal and Marble's filing of his habeas petition. Even excluding all time while the motion remained pending in the postconviction appeal, more than two days passed between the June 4 *nunc pro tunc* order and June 11, when Marble's state habeas petition is deemed filed under § 2244(d)(2) and *Stillman*. But this Court has not determined whether a state postconviction action remains pending until a decision is issued or until the time to petition for rehearing expires. *Cf. Lawrence v. Florida*, 549 U.S. 327, 331 (2007).[3] Thus, for present purposes, the Court will assume Marble's postconviction appeal was "pending" through June 11, 2009, 15 days after the May 27 decision. Mont. R. App. P. 20, 21. Day 364 of the limitations period was June 12, 2009, a Friday, and Marble had to file his federal habeas petition on or before Monday, June 15, 2009. Marble filed his state habeas petition before that, on June 11, 2009. Therefore, Marble's federal petition would be timely filed, without need for equitable tolling, if Marble had been correct that his habeas petition tolled time under § 2244(d)(2).

---

[3] To determine when a conviction is final under § 2244(d)(1)(A), the remittitur – the local equivalent of mandate – is disregarded pursuant to U.S. Sup. Ct. R. 13(3). But *Lawrence* holds that time is not tolled under § 2244(d)(2) for filing a petition for writ of *certiorari* in the Supreme Court following a state court's final disposition on collateral review. Thus, there appears to be no basis for disregarding the time for rehearing when calculating time under § 2244(d)(2).

10

22. A state prisoner who files his federal petition out of time is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks omitted); *see also Calderon v. United States Dist. Court* ("*Beeler*"), 128 F.3d 1283 (9th Cir. 1997),[4] *cited with approval in Holland*, 130 S. Ct. at 2564. The extraordinary circumstance must "proximately cause[] the late filing." *Stillman*, 319 F.3d at 1203. The prisoner bears the burden of showing that equitable tolling is appropriate. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

23. This Court has already found that Marble pursued his rights diligently. Findings and Recommendation (Doc. 9) at 18. There is no reason to alter that finding. The State suggests it was not "diligent" to wait until Day 364 to file the state postconviction petition. The suggestion is not inapposite, *see Roy v. Lampert*, 465 F.3d 964, 972 (9th Cir. 2006), but the State introduced no evidence to show what Marble or retained counsel were doing during that period. It takes time to locate counsel, and counsel can and should investigate the case and prepare the postconviction petition with care. Using almost the entire limitations period to do

---

[4] *Beeler* was overruled on other grounds by *Calderon v. United States Dist. Court* (*Kelly*), 163 F.3d 530, 540 (9th Cir. 1998). *Kelly* was itself abrogated by *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). *Beeler* remains good law.

11

so does not necessarily show a lack of diligence. Without evidentiary support, therefore, the State's suggestion fails. In fact, if diligence alone were sufficient, Marble would be entitled to equitable tolling.

24. An "extraordinary circumstance" is something "external" to the prisoner or "beyond his direct control." *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (brackets omitted). "[T]he proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008) (discussing *Mendoza v. Carey*, 449 F.3d 1065, 1069-70 (9th Cir. 2006) (finding an extraordinary circumstance where Spanish-speaking prisoner had no access to translator or Spanish-language materials)).

25. "The threshold for obtaining equitable tolling is very high," *Townsend v. Knowles*, 562 F.3d 1200, 1205 (9th Cir. 2009), *abrogated on other grounds by Walker v. Martin*, ___ U.S. ___, 131 S. Ct. 1120, 1124-25 (2011), "lest the exceptions swallow the rule," *Miranda*, 292 F.3d at 1066; *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). As the Third Circuit put it, equitable tolling is appropriate "only when the principles of equity would make rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New*

*Jersey State Dep't of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998) (following
*Beeler*, 128 F.3d at 1289).

26. The determinative question here, as framed by Marble, is whether he was
in some way misled to believe that a state habeas petition was a proper vehicle for
the transfer-hearing claim he described in his motion in the postconviction appeal.
To use the words of the federal statute, was Marble misled to believe either that
*any* state petition for writ of habeas corpus would be "a properly filed application
for . . . collateral review" or that *his* petition, under the circumstances, would be "a
properly filed application for . . . collateral review?"

27. If Marble was not misled but was mistaken in believing time would be
tolled under § 2244(d)(2) for a state habeas petition, he is not entitled to equitable
tolling. *Compare, e.g., Harris v. Carter*, 515 F.3d 1051, 1053-56 & n.3 (9th Cir.
2008) (applying equitable tolling where petitioner timed his filing in reliance on a
correct reading of circuit precedent, though later overturning of that precedent
rendered petition untimely), *with Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir.
2010) (per curiam) (refusing equitable tolling where *pro se* petitioner
misunderstood precedent); *see also Lawrence v. Florida*, 549 U.S. 327, 336-37
(2007) (holding, in a capital case, that an attorney's mistaken belief federal
limitations period was tolled under § 2244(d)(2) for ninety days after completion
of state postconviction proceedings was not an extraordinary circumstance

justifying equitable tolling); *Brambles v. Duncan*, 412 F.3d 1066, 1070-71 (9th Cir. 2005) (no extraordinary circumstance justifying equitable tolling where federal district court gave petitioner option of dismissing all claims or dismissing only unexhausted claims in mixed petition, petitioner chose former, then was time-barred on return to federal court with fully exhausted petition); *Malcom v. Payne*, 281 F.3d 951, 963 (9th Cir. 2002) (no extraordinary circumstance where attorney believed clemency petition would toll federal limitations period under § 2244(d)(2)).

28. Marble has not identified any Montana authority establishing that a state habeas petition is generally available for the purpose of collateral attack on a criminal judgment. While Montana law recognizes the ancient common-law writ of habeas corpus, it restricts the writ's availability:

> (1) Except as provided in subsection (2), every person imprisoned or otherwise restrained of liberty within this state may prosecute a writ of habeas corpus to inquire into the cause of imprisonment or restraint and, if illegal, to be delivered from the imprisonment or restraint.

> (2) The writ of habeas corpus is *not available* to attack the validity of the conviction or sentence of a person who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal. The relief under this chapter is not available to attack the legality of an order revoking a suspended or deferred sentence.

Mont. Code Ann. § 46-22-101 (emphasis added); *see also* 28 U.S.C. § 2254(b)(1)(A) (requiring federal petitioner to exhaust "the remedies *available* in

14

the courts of the State"); *Carey v. Saffold*, 536 U.S. 214, 223 (2002) ("for purposes of applying a federal statute that interacts with state procedural rules," a federal district court must "look to how a state procedure functions.").

29. An "attack" on "the validity of a conviction or sentence of a person who has been adjudged guilty . . . and has exhausted the remedy of appeal" is a "collateral attack" on a criminal judgment, as opposed to the "direct" attack a Montana prisoner might mount by appealing the judgment within sixty days after its imposition. Having restricted the writ of habeas corpus so that it is "not available" as a means of collateral attack, Montana law provides instead:

> A person adjudged guilty of an offense in a court of record who has no adequate remedy of appeal and who claims that a sentence was imposed in violation of the constitution or the laws of this state or the constitution of the United States, that the court was without jurisdiction to impose the sentence, that a suspended or deferred sentence was improperly revoked, or that the sentence was in excess of the maximum authorized by law *or is otherwise subject to collateral attack* upon any ground of alleged error available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy may petition the court that imposed the sentence to vacate, set aside, or correct the sentence or revocation order.

Mont. Code Ann. § 46-21-101(1).

30. Montana law has distinguished collateral attacks on criminal judgments as a subclass of habeas inquiries into the cause and legality of detention since 1967. *Lott v. State*, 150 P.3d 337, 340 ¶ 11 (Mont. 2006). "The post-conviction hearing statutes are an attempt by the legislature to consolidate all of the common-

law statutory remedies normally available to challenge a sentence." *In re McNair*, 615 P.2d 916, 917 (Mont. 1980). In 1981, the Legislature amended § 46-22-101(2) to clarify that "[r]elief under this chapter is not available to attack the validity of a conviction of a person who has been adjudged guilty in a court of record and has exhausted the remedy of appeal." In 1985, the Legislature added the phrase "or sentence" after the word "conviction." *Lott*, 150 P.3d at 341 ¶¶ 14-15.

31. As the Montana Supreme Court observed in *Lott v. State*, "the writ of habeas corpus has become largely supplanted by postconviction statutes which have, in turn, become increasingly restrictive" by the addition of, among other things, a statute of limitations. *Id.* ¶ 16.

32. In *Lott*, the Montana Supreme Court held that Mont. Code Ann. § 46-22-101(2) was an unconstitutional suspension of the state writ of habeas corpus, *see* Mont. Const. Art. II, § 19, because it foreclosed a challenge to "a facially invalid sentence." Jason Lott was convicted of aggravated burglary and felony assault, both of which included use of a weapon as an element. He was sentenced for those offenses and also received an additional ten-year sentence enhancement for use of a weapon. Under *State v. Guillaume*, 975 P.2d 312, 316 ¶ 16 (Mont. 1998), the ten-year weapon enhancement violated Lott's state constitutional protection against double jeopardy. In *State v. Whitehorn*, 50 P.3d 121, 129 ¶¶ 42-43 (Mont. 2002), the Montana Supreme Court made *Guillaume* applicable to timely-filed

16

postconviction cases. But *Guillaume* and, for that matter, *Whitehorn* were decided well after Lott's sentence was imposed and his time to file for postconviction review expired. Consequently, Lott was serving a ten-year sentence that was, on its face, invalid. The Montana Supreme Court held that withholding the writ under § 46-22-101(2) in these circumstances would be intolerable. *Lott*, 150 P.3d at 342 ¶¶ 21-22. But the court did not in any way look into the procedures by which Lott's conviction or sentence were imposed.

33. In *Gratzer v. Mahoney*, 150 P.3d 343 (Mont. 2006), the Montana Supreme Court considered three challenges to Gratzer's sentence in a habeas corpus action. Each of the challenges it considered were "facial" challenges: Gratzer claimed that his eligibility for parole could not be eliminated, that he could not be designated a dangerous offender, and that he could not receive a ten-year sentence enhancement for use of a weapon, all as a matter of statutory interpretation with no inquiry into the facts of his case. Following *Lott*, the Montana Supreme Court recognized that each of these challenges "dr[e]w into question the facial validity of [Gratzer's] sentence." *Gratzer*, 150 P.3d at 345 ¶ 2 & n.1. Again, however, the court did not look into the procedures by which Gratzer's conviction or sentence were imposed.

34. Marble testified that he was aware of *Lott* and *Gratzer* when he filed the motion in his postconviction appeal on May 1, 2009. But to the extent he thought

17

his transfer-hearing claim fit their mold, he was mistaken. Marble's transfer-hearing claim did not allege the district court could not under any circumstances try and sentence him as an adult. It did not allege the trial court could not under any circumstances impose a twenty-year sentence for sexual intercourse without consent. The transfer-hearing claim did not challenge the *facial* validity of Marble's sentence. The claim alleged his sentence was invalid because the underlying record showed he did not have a transfer hearing.

35. Unlike the petitioners in *Harris* and *Townsend*, who "relied in good faith on then-binding circuit precedent in making [the] tactical decision to delay filing a federal habeas petition," *Harris*, 515 F.3d at 1055; *see also Townsend*, 562 F.3d at 1206, Marble has not claimed he relied on any contemporary Montana case holding that the writ of habeas corpus is available under any circumstances or conditions to challenge a procedural or substantive defect – even one of constitutional dimension – underlying a conviction or sentence. *Lott* and *Gratzer* do not say that, and it is not reasonable to read them as if they say it. Marble has not shown that he was misled by Montana precedent to believe that a state petition for writ of habeas corpus would generally be "a properly filed application for . . . collateral review."

36. The remaining question is whether Marble was misled, under the specific circumstances of his case, to believe that *his* petition for writ of habeas corpus

18

would be "a properly filed application for . . . collateral review."

37. On May 1, 2009, Marble himself requested leave to file a state habeas petition. He testified that he was aware, on May 1, 2009, of *Gratzer* and *Lott*; of the federal limitations period; and, specifically, of 28 U.S.C. § 2244(d)(2). He filed the motion in his postconviction appeal in the hope of obtaining relief on the transfer-hearing claim from the Montana Supreme Court; or, failing that, in the hope of exhausting the claim so that it could be presented in federal habeas. In addition, Marble was aware that federal time was tolled while his postconviction appeal remained pending. And he also believed that a state habeas petition, like a postconviction proceeding, would toll time under § 2244(d)(2).

38. When the State responded to Marble's motion on May 15, 2009, it did not mislead him to believe that a state habeas petition containing only the transfer-hearing claim would be "a properly filed application for . . . collateral review." On the contrary, the State expressly raised the possibility that habeas relief might not be "available."

39. On May 28, 2009, as soon as he learned of the Montana Supreme Court's decision of the postconviction appeal – before the Montana Supreme Court spoke to his motion at all – Marble signed and mailed a state habeas petition to the Montana Supreme Court. He testified that he did so because he was not sure whether the Montana Supreme Court's decision of the appeal, without mentioning

19

the pending motion, would mean he still had something "pending" for tolling purposes in the state court. He signed and mailed the habeas petition "to make sure" he had "something pending." While Marble was aware of *Lott* and *Gratzer*, he cited *Lott* only for the proposition that "the writ of habeas corpus is designed . . . to remedy extre[me] malfunctions in the state criminal justice system." State Habeas Pet. at 8 ¶ 35 (internal quotation marks omitted). He did not demonstrate any recognition of the narrow scope of habeas review authorized by *Lott* and *Gratzer*. In sum, he made a mistake about the meaning of *Lott* and *Gratzer*.

40. Nothing prevented Marble from filing a *federal* habeas petition at the same time he filed his *state* habeas petition. Although he testified that he did not want to file a mixed petition, nothing prevented him from filing any exhausted claims and asking this Court to stay the proceedings while he attempted to exhaust the transfer-hearing claim. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005); *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

41. On June 2, 2009, the Montana Supreme Court issued an order addressing the motion Marble had filed in the postconviction appeal. On June 4, 2009, it issued a *nunc pro tunc* order. The difference between the two is shown here:

| Order of June 2, 2009 | Order of June 4, 2009 |
|---|---|
| On May 15, 2009, the State filed its response to | On May 15, 2009, the State filed its response to |

20

Marble's motion. The State claims that his motion is procedurally barred, and that Marble is entitled to no relief. It further notes that § 46-22-201, MCA, which sets forth the procedure for filing an application for a writ of habeas corpus, does not contemplate a motion for leave to file such an application. The State also points out that Marble's fully briefed appeal is pending before the court.

. . .

As the State noted in its response to the instant motion, the most judicious course for this Court to take would be to decide the issues in the appeal before entertaining any possible habeas corpus relief. Now that the Court has done just that, and so as to forestall a successive petition from Marble, we deem it appropriate to construe Marble's motion as a request for habeas corpus relief. Therefore,

 IT IS HEREBY ORDERED that Marble's motion is construed as a petition for a writ of habeas

Marble's motion. The State claims that his motion is procedurally barred, and that Marble is entitled to no relief. It further notes that Marble's fully briefed appeal is pending before the court.

. . .

As the State noted in its response to the instant motion, the most judicious course for this Court to take would be to decide the issues in the appeal before entertaining any possible habeas corpus relief. Now that the Court has done just that, we deem it appropriate to construe Marble's motion as a request for habeas corpus relief. Therefore,

 IT IS HEREBY ORDERED that Marble's motion for leave to file a petition for a writ of habeas

| corpus. | corpus is GRANTED. Marble will be required to do so under a new cause number, as remittitur will shortly issue in this matter. |
|---|---|
| IT IS FURTHER ORDERED that the State shall have 20 days from the date of this Order within which to file a memorandum of law addressing the merits of Marble's argument concerning the lack of transfer hearing, and the propriety of habeas relief as a result. . . . | IT IS FURTHER ORDERED this Order will supersede the Order issued June 3 [sic], 2009. . . . |

Orders of June 2, 2009 (Doc. 7-4) at 1-2, and June 4, 2009 (Doc. 7-5) at 1-2.

42. Marble testified that he did not know what the *nunc pro tunc* order meant or why the Montana Supreme Court required him to file a petition under a separate cause number. In short, he did not attach any particular meaning to the *nunc pro tunc* order as opposed to the Order of June 2, 2009.

43. In both orders, the Montana Supreme Court did what Marble asked it to do as an alternative if the court did not extend his postconviction proceedings: it construed the motion he filed in his postconviction appeal as a request for habeas relief. Between the June 2 Order and the June 4 Order, the court changed its approach. Instead of deeming the motion a habeas petition, as it did on June 2, the

22

court's Order of June 4 required Marble to submit a pleading in the proper form for a habeas petition.

44. Also on June 4, 2009, a deputy clerk returned "documents" to Marble. The cover letter directed his attention to the fact that "petitions" must be submitted in compliance with Mont. R. App. P. 14, titled "Jurisdiction – extraordinary writs – supervisory control – original proceedings." The writ of habeas corpus is governed by this rule. Mont. R. App. P. 14(2). Rule 14(5)(b) defines what a habeas petition must contain. It provides, in pertinent part:

> The petition must set forth:
>     (i)  The facts which make it appropriate that the supreme court accept jurisdiction;
>     (ii)  The particular legal questions and issues anticipated or expected to be raised in the proceeding;
>     (iii)  In summary fashion, the arguments and authorities for accepting jurisdiction . . . ; and
>     (iv)  To the extent they exist, as exhibits, . . . a copy of each judgment, order, notice, pleading, document proceeding, or court minute referred to in the petition or which is necessary to make out a prima facie case or to substantiate the petition or conclusion or legal effect.

Mont. R. App. P. 14(5)(b) (eff. Oct. 1, 2007); *see also* Mont. Code Ann. § 46-22-201 (describing the information a habeas petition must contain).

45. Marble's motion in the postconviction appeal did not comply with Mont. Code Ann. § 46-22-201 or Mont. R. App. P. 14. It was not, after all, a habeas petition. The actual petition Marble signed on May 28, 2009, recast his motion in

terms more appropriate to habeas relief as described in Mont. Code Ann. § 46-22-201(1). *Compare* Mot. for Limited Remand (Doc. 7-1), *passim*, *with* State Habeas Pet. at 1 (caption naming correct Respondent), 3 ¶ 15, 6 ¶ 27, 7-8 ¶¶ 33-37. Filing a habeas petition was Marble's best opportunity to set out "facts which make it appropriate that the supreme court accept jurisdiction," to attach the exhibits he believed "necessary to make out a prima facie case," and to articulate "the arguments and authorities for accepting jurisdiction." Mont. R. App. P. 14(b)(i), (iii), (iv). Thus, the Montana Supreme Court's *nunc pro tunc* order only recognized what Marble had already recognized himself on May 28: that the motion filed in the postconviction appeal did not speak the language of habeas corpus.

46. Although the writ of habeas corpus is an "extraordinary" writ, *see* Mont. R. App. P. 14(2), Marble introduced no evidence to show that it is *factually* "extraordinary" for *pro se* prisoner-litigants to file habeas petitions in the Montana Supreme Court. Although counsel emphasized in argument that the court ordered the State to respond, there is no evidence that it is "extraordinary" for the Montana Supreme Court to grant leave to proceed in forma pauperis or to order the State to file a response to a habeas petition that is ultimately dismissed or denied as an improper collateral attack on a conviction or sentence for which the state habeas writ is "not available."

47. Courts including this one routinely grant leave to proceed in forma

24

pauperis and expect or order a response from an opposing party. But no litigant could *reasonably* infer from these premises that the action in question must be cognizable, that the Court must have jurisdiction over the subject-matter, that the pleading must state a claim on which relief may be granted, and that the action must be timely. Courts undertake these procedures simply to give the filing party, especially *pro se* litigants, the opportunity to make a case.

48. Marble was a *pro se* litigant acting in good faith to attempt to obtain relief on a claim he believed to be valid and whose legal basis he had not discovered until his postconviction appeal was pending. The Montana Supreme Court gave Marble the opportunity he requested to make his case. While it was not required to give him that opportunity, the fact that it did so is not an extraordinary circumstance. Neither by granting Marble's motion to proceed in forma pauperis nor by ordering the State to file a response did the Montana Supreme Court communicate that Marble's transfer-hearing claim was properly presented in a state habeas petition. If this Court were to hold that the Montana Supreme Court "misled" Marble, it would only incentivize rigid application of formal requirements against *pro se* litigants.

49. Had Marble not already misunderstood *Lott* and *Gratzer*, he would not even have requested leave to file a state habeas petition. He would not have prepared and mailed a state habeas petition immediately upon learning the

Montana Supreme Court had decided his postconviction appeal. He would not have delayed filing his federal petition until the conclusion of the state habeas proceeding. Neither the State nor the Montana Supreme Court induced him to do something he would not otherwise have done, and neither prevented him from timely filing his federal petition. On a fully developed factual record, his case is not distinguishable from that of any other Montana prisoner who believes, in good faith but mistakenly, that a state habeas petition is a proper vehicle for collateral review of a criminal judgment.

50. Although the appellate court's mandate permits this Court to address only equitable tolling, a few of Marble's arguments can be construed to allege that Montana habeas law is so confusing that he – a *pro se* prisoner, "unlearned in the law," *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012) – reasonably formed the belief that a state habeas petition would give rise to statutory tolling, so he should be entitled to equitable tolling. It is doubtful that the phenomenon of cases and statutes being confusing could constitute an "extraordinary circumstance"; or that there would be any federal limitations period at all if the phenomenon of cases and statutes being confusing were sufficient to support equitable tolling for pro se litigants. A higher court than this one will have to make that determination. For present purposes, it is enough to say that Montana law on the issue here actually draws the line with some clarity.

26

51. Marble points to *Delancy v. Florida Dep't of Corrs.*, 246 F.3d 1328 (11th Cir. 2001) (per curiam), and *Thompson v. Florida Dep't of Corrs.*, 595 F.3d 1233 (11th Cir. 2010) (per curiam), *see* Pet'r Br. (Doc. 29) at 15-17, to show that mere use of the wrong vehicle for relief does not preclude tolling under § 2244(d)(2). In a case where a petitioner files a state habeas petition, is advised that a habeas petition is not the appropriate vehicle, is instructed instead to file a postconviction petition, *see, e.g.*, *Schrapps v. Mahoney*, 36 P.3d 338, (Mont. 2001), and promptly does so, Marble would at least have a better argument. But that is not what happened here. "[F]or purposes of applying a federal statute that interacts with state procedural rules," a federal district court must "look to how a state procedure functions." *Saffold*, 536 U.S. at 223. Montana law is quite clear that the scope of "collateral review" is narrow. The writ of habeas corpus is not intended to play a role in it. It appears that Florida authorizes the filing of multiple habeas petitions as well as multiple motions under the Florida Rules of Criminal Procedure. *See Thompson*, 595 F.3d at 1235. Montana law does not. It implements and, so far as this Court is aware, enforces a one-petition rule. Mont. Code Ann. §§ 46-21-102, -105. While a motion to withdraw a guilty plea is also "available" for collateral relief, it too is time-limited, *id.* § 46-16-105(2), and of course it would not be "available" to someone who stood trial. With all respect to the Eleventh Circuit (especially in light of that court's acquaintance with and this Court's lack

of familiarity with Florida postconviction law), this Court does not believe that §

2244(d)(2) is intended to toll time regardless of what is filed in what sort of

pleading in state court. Such an approach is sure to result in repetitive or baseless

filings in state court, turning the state courts into a parking lot while some

prisoners work on their federal habeas petitions. This Court believes that is what

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005), sought to avoid when it counseled

against an interpretation of § 2244(d)(2) that would allow a state prisoner to "toll

the [federal] statute of limitations at will." *Id.* at 413.

52. Marble's is not merely a case of filing under the wrong statutory vehicle.

He has not identified any other vehicle that *was* "available" to him when he filed

his state habeas petition. The Court is not aware of one. Marble discovered the

legal basis of a new claim for relief when his postconviction appeal was well

underway and he was already barred from amending his postconviction petition.

He was in no different position, in principle, than a litigant who discovers the legal

basis of a new claim for relief years after the conclusion of his postconviction

proceedings.

53. The issue is not controlled by the Montana Supreme Court's common

use of the phrase "procedural bar" to describe the operation of Mont. Code Ann. §

46-22-101(2), *see* Pet'r Br. at 13-14, or by its common practice of concluding that

habeas petitions amounting to improper collateral attacks "lack merit." The legal

world would be a more hospitable place if there were a common and consistent agreement on vocabulary, but there is not. *Cf. Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502-03 (1995). Marble points to *Artuz v. Bennett*, 531 U.S. 4 (2000), where a New York state court dismissed a petitioner's collateral petition because his claims were or could have been decided on direct review. The Supreme Court held the state court's application of a "procedural bar" did not mean the federal habeas petitioner did not have a "properly filed application for State post-conviction or other collateral review . . . pending" in state court while the collateral petition was under review. Consequently, the federal petitioner was entitled to tolling under § 2244(d)(2). *Id.* at 10-11. But the availability of habeas relief under Montana law is more accurately described by the language of the Second Circuit, whose opinion was reviewed and affirmed in *Bennett*. The Second Circuit said the New York state petition was "properly filed" because it "complied with those rules governing whether an application for state post-conviction relief is *recognized as such* under state law." *Bennett*, 531 U.S. at 7 (internal quotation marks omitted) (emphasis added). Unlike the petition at issue in *Bennett*, Marble's state habeas petition was *not cognizable* as a vehicle for collateral review in Montana. Transferring the terms used by the State's courts to other contexts is a less reliable guide to the meaning of those terms than looking at "how a state procedure *functions*." *Saffold*, 536 U.S. at 223 (emphasis added). Whether the

29

requirements of § 2244(d)(2) are met is a federal question resolved by examining the function of state procedures, not by ascribing to the state courts' words the meaning they would have if used by a federal court.

54. Marble asserts that the *Lott* court simply "refused to apply a procedural bar" but did not "ignore a restriction on its jurisdiction." Pet'r Br. at 14. This statement shortchanges both the significance and the narrowness of the court's decision. The Montana Supreme Court held § 46-22-101(2) *unconstitutional* as applied to a prisoner with a facially invalid sentence. It relied on its independent powers under the Montana Constitution, notwithstanding its usual and continuing acknowledgement of the Legislature's authority to decide the terms and conditions of collateral review of state criminal judgments. The analogue to *Lott* is not, say, *Martinez*, 132 S. Ct. at 1320, which authorizes refusal to apply a procedural bar without ignoring any restrictions on federal courts' habeas jurisdiction, but *Boumediene v. Bush*, 553 U.S. 723, 732-33 (2008), which refused to recognize Congress's duly enacted legislative scheme for divesting the federal courts of habeas jurisdiction in cases involving "enemy combatants." In other words, the *Lott* decision *did* ignore a restriction on the Montana Supreme Court's jurisdiction – by recognizing that the Montana Constitution conferred a greater jurisdiction that the Legislature could not strip away with respect to a person serving a facially invalid sentence.

55. Thus, Marble was and is correct that the Montana Supreme Court has jurisdiction to entertain habeas petitions, as do the State's district courts. Mont. Code Ann. §§ 3-2-202(1), -5-302(5); *Morrison v. Mahoney*, 41 P.3d 320, 21-22 ¶¶ 8-9 (Mont. 2002), *abrogated on other grounds by Thomas v. Doe*, 266 P.3d 1255, 1256 ¶ 6 (Mont. 2011)). But the Montana Supreme Court has jurisdiction to entertain petitions for various writs. *See, e.g., Office of the State Public Defender v. Eighteenth Jud. Dist. Court*, 255 P.3d 107 (Mont. 2011); *State v. Ranta*, 958 P.2d 670, 672 ¶ 12 (Mont. 1998). The scope of a court's jurisdiction cannot determine what is a "properly filed application for State . . . collateral review." With respect to state habeas petitions, that determination is made by Mont. Code Ann. § 46-22-101, subject to the narrow exception of a challenge to a facially invalid sentence as described by *Lott* and *Gratzer*. Marble's petition, containing only the transfer-hearing claim, fell within subsection (2) of the statute but not within the narrow *Lott* exception. The writ of habeas corpus was no more "available" to challenge the validity of Marble's conviction or sentence (excepting only any facial invalidity of his sentence) than the writ of coram nobis or writ of supervisory control would be "available" for that purpose. The Montana Supreme Court had jurisdiction under the Montana Constitution to recognize a new exception to Mont. Code Ann. § 46-22-101(2). It did not do so in Marble's case. His unsuccessful petition to the Montana Supreme Court is indistinguishable from that of the unsuccessful

petitioner in *Pace v. DiGuglielmo*, who sought an exemption from the state's time bars and did not get it. "[J]urisdictional matters," like exceptions from time bars, "often necessitate judicial scrutiny." Where scrutiny shows that neither is supportable, "'that is the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. 408, 414 (2005). Neither on grounds of statutory interpretation nor of equity is Marble entitled to tolling for the pendency of his state habeas petition.

56. Because Marble was diligent, the result in this case may appear harsh. He simply made a mistake – and not a particularly unusual mistake – about the meaning of state and federal law. But a mistake is not an extraordinary circumstance that can justify equitable tolling. The unavoidable fact is that no one interfered with Marble's capacity to file his federal petition on time.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Marble is not entitled to equitable tolling. His federal petition should be dismissed with prejudice as untimely.

2. A certificate of appealability should be GRANTED as the remand itself shows that reasonable jurists could disagree on the application of equitable tolling.

3. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

4. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Either party may object to this Findings and Recommendation within 14

days.[5] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de

novo determination by the district judge and/or waive the right to appeal.

DATED this *15th* day of January, 2014.

Jeremiah C. Lynch
United States Magistrate Judge

---

[5] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.